# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

          Plaintiff,

v.

PAUL S. KEMPER, KEVIN CARR, MR. KRUEGER, SGT. LANGAFELT, C.O. OBUCINA, A. LARSON, MICHELLE BONES, E. DAVIDSON, CINDY O'DONNELL, CAPTAIN MILLER, SGT. CRUZ, C.O. LANG, LON BECHER, KEITH SPRINGSTUBE, C.O. CHRISTIANSON, SGT. GUDAL, JUSTIN SCHULLER, and C.O. STOIBER,

          Defendants.

Case No. 20-CV-431-JPS

**ORDER**

      Plaintiff Terrance J. Shaw, an inmate confined at Racine Correctional Institution ("RCI"), filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that his rights under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") were violated. (Docket #1). Plaintiff has paid $350.00 towards the filing fee. This order screens Plaintiff's complaint and resolves his other pending motions.

**1.    SCREENING THE COMPLAINT**

    **1.1    Federal Screening Standard**

      Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2 Plaintiff's Allegations

Plaintiff has painful arthritis in his hands and a degenerative bone disease in his hips and knees. (Docket #1 at 3–4). The degenerative bone disease in his knees requires ice three times a day. (*Id.*) Defendant Obucina ("Obucina") is a correctional officer ("C.O.") at RCI and Defendant Langafelt ("Langafelt") is a Sergeant there. On August 13, 2017, Plaintiff asked Obucina for assistance from a unit aid to get ice. (*Id.* at 3). Obucina responded, "[y]our problems don't matter to me." (*Id.*) Plaintiff then asked Langafelt for a unit aid to get ice. (*Id.*) Langafelt responded, "I will take care of it," however, no unit aid came to help Plaintiff get ice all day. (*Id.* at 3–4). Plaintiff should have had access to a wheelchair, but there was no wheelchair provided to him. (*Id.*) Inmate Daniel Dauffenbach ("Inmate Dauffenbach") was working as a unit aid that day and stated that Obucina and Langafelt ordered him to take away Plaintiff's wheelchair. (*Id.* at 14).

Later on August 13, 2017, Plaintiff filed Inmate Complaint ("IC")[1] RCI-2017-22426. (*Id.* at 4). On August 16, 2017, Defendant A. Larson

---

[1] The Wisconsin Department of Corrections ("DOC") maintains an inmate complaint review system to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10). If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2). If the ICE recommends, and the reviewing authority accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12.

("Larson"), an ICE employee, returned the complaint and instructed Plaintiff that he must attempt to resolve the issue by contacting Unit Manager Krueger. (*Id.*) On August 17, 2017, Plaintiff wrote to Defendant Krueger ("Krueger"), informing him that Plaintiff was not accommodated for his medical needs on August 13, 2017. (*Id.*) On August 24, 2017, Plaintiff wrote to the Health Services Unit ("HSU") "inquiring about being accommodated both indoor and outdoor with a wheelchair 24-7." (*Id.*) The HSU responded on August 27, 2017, stating that "[y]our restriction for wheelchair indoors/outdoors and 'General' use is up to date." (*Id.*)

On August 30, 2017, Plaintiff resubmitted RCI-2017-22426. (*Id.* at 4–5). On September 1, 2017, the ICE acknowledged Plaintiff's IC, summarizing that Plaintiff "[s]tates that staff failed to respond to his requests to provide him with his needed wheelchair or program aide so he could get ice to ice his injured areas. He states this caused him to remain in his cell for the entire day suffering pain." (*Id.* at 5). Later that day, ICE employee Defendant Michelle Bones ("Bones") dismissed the IC. (*Id.*) Bones noted to Plaintiff, "[y]ou are advised not to describe the actions of staff contrary to the facts in your letter." (*Id.*) Plaintiff claims Bones's statement to him is a "threat to an elderly person." (*Id.*) On September 8, 2017, the Warden, Defendant Paul Kemper ("Kemper"), accepted the ICE's recommendation and dismissed RCI-2017-22426. (*Id.*) Plaintiff appealed on September 8, 2017. (*Id.*)

On November 26, 2017, Plaintiff was taking a shower when his wheelchair was taken away. (*Id.* at 6). Later that day, Plaintiff filled out an

---

The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13.

interview/information request to Krueger, informing him that "inmate Daniel Dauffenbach was instructed to come into the shower and take the wheelchair away, in such a cruel fashion, which left [Plaintiff] naked, hanging-on to the disability grab-bars waiting until unit aid Dauffenbach returned with the wheelchair. This was an extremely humiliating and psychological traumatizing experience." (*Id.* at 6.) Inmate Dauffenbach stated he was instructed by Defendant Sergeant Keith Springstube ("Springstube") to remove the wheelchair while Plaintiff was in the shower. (*Id.* at 6, 14).

On November 17, 2017, Plaintiff filed IC RCI-2017-30180, against Krueger, Bones, and Kemper, "for ongoing/repeated deliberate indifference to Plaintiff's ADA/RA and Elder Abuse Rights, in which they receive Federal financial assistance." (*Id.* at 5). On November 29, 2017, Plaintiff added an addendum/supplement to RCI-2017-30180 regarding the November 26, 2017 shower incident. (*Id.* at 6). ICE employee, Defendant Captain Miller ("Miller"), interpreted the addendum to RCI-2017-30180 as a separate issue and created a new IC number, RCI-2017-30693, to address it. (*Id.* at 7). On November 30, 2017, the ICE issued a receipt acknowledging RCI-2017-30404, which was about the November 26, 2017 shower incident. (*Id.* at 7). On December 5, 2017, the ICE issued a receipt acknowledging that Krueger was informed through documentation of another wheelchair incident with staff. (*Id.*)

On December 11, 2017, Miller affirmed–with modification–two of Plaintiff's IC's (RCI-2017-30693 and RCI-2017-30404). As to each, Miller affirmed the IC but stated "[i]t appears that there was no malice by staff, merely a misunderstanding of an unclear restriction as entered into WICS." (*Id.* at 8). Later that day, Defendant Lon Becher ("Becher") affirmed. (*Id.*) On

December 13, 2017, Plaintiff appealed because he was not satisfied with the result, stating that Miller had indemnified the guilty staff from blame and had ignored Plaintiff's medical records. (*Id.*) On December 15, 2017, the CCE acknowledged both appeals. (*Id.* at 9). On December 21, 2017, CCE employee, Defendant Emily Davidson ("Davidson") recommended that RCI-2017-30404 and RCI-2017-30693 be affirmed with the modifications made by Miller. (*Id.* at 10). On that same date, Defendant Cindy O'Donnell ("O'Donnell"), of the Office of the Secretary, affirmed with Miller's modifications. (*Id.*)

On December 19, 2017, the ICE recommended affirmation of RCI-2017-30180, with Miller writing "[i]t appears that there was no malice by staff, merely a misunderstanding of an unclear restriction as entered into WICS." (*Id.* at 9). Kemper affirmed on December 19, 2017. The next day, Plaintiff appealed because he objected to Miller's findings of fact. (*Id.*) The CCE acknowledged the appeal on January 3, 2018. (*Id.* at 10). On January 16, 2018, Davidson recommended that RCI-2017-30180 be affirmed and O'Donnell affirmed it. (*Id.* at 11).

On December 6, 2017, Plaintiff missed a doctor's appointment because he was not provided with a wheelchair. (*Id.* at 7). Plaintiff wrote to the HSU about missing his appointment. On December 13, 2017, the HSU responded, stating that a "[w]heelchair shall be available" and that "there should never been a problem with being seen due to this." (*Id.* at 9). On January 4, 2018, the ICE assigned number RCI-2018-371 to the IC that Plaintiff submitted. (*Id.* at 10). On January 18, 2018, Miller recommended dismissal of this IC, noting that "[w]hile the inmate did miss his appointment, it does not appear as if he informed the Unit Sergeant he was having a problem so that the Sergeant could fix it." (*Id.* at 11). Kemper

Page 6 of 15
Case 2:20-cv-00431-JPS   Filed 03/30/21   Page 6 of 15   Document 19

agreed with the ICE and dismissed RCI-2018-371 on January 18, 2018. (*Id.*) Plaintiff appealed on January 23, 2018, as he felt Miller was blaming the victim (i.e., Plaintiff) for what happened. (*Id.*) On February 6, 2018, CCE Davidson recommended dismissal of RCI-2018-371 because "[t]here is no evidence the inmate attempted to make the scheduled appointment or relay to unit staff he would miss the Doctor appointment." (*Id.* at 12). O'Donnell agreed with the CCE and dismissed the IC on February 6, 2018. (*Id.*)

On January 13, 2018, Plaintiff filed a new IC, asserting that staff were continuing to ignore the HSU WISC special handling summary regarding Plaintiff's wheelchair access, despite the affirmed ICs Plaintiff had already filed on the issue. (*Id.* at 10). On January 14, 2018, Plaintiff submitted a supplement to identify Defendant C.O. Christianson ("Christianson") as the person who did not accommodate Plaintiff's medical needs. (*Id.*) On January 22, 2018, Plaintiff wrote to Krueger regarding the issues with obtaining wheelchair access. (*Id.* at 11). On January 25, 2018, Krueger responded by stating, "[y]ou are not assigned a personal use wheelchair!" (*Id.*) On February 8, 2018 the ICE provided number RCI-2018-3527 for Plaintiff's IC. (*Id.* at 12). On March 1, 2018, Bones recommended that the IC be affirmed, as a wheelchair had been designated to Plaintiff by the HSU. Kemper affirmed the same day. (*Id.*) Also on March 1, 2018, Plaintiff appealed RCI-2018-3527, because he "was right all along" regarding all of his previous ICs, and he had been the victim of "on-going, non-stop, deliberate indifference" that had caused him physical and psychological pain and suffering. (*Id.* at 13). On March 28, 2018, CCE Brad Hompe recommended affirming, and Secretary Cathy Jess affirmed the IC. (*Id.*)

Finally, Plaintiff alleges that Inmate Dauffenbach, in various affidavits,[2] has stated that Defendants Sergeant Gudal ("Gudal"), Sergeant Cruz ("Cruz"), C.O. Lang ("Lang"), C.O. Schuller ("Schuller"), C.O. Stoiber ("Stoiber"), Langafelt, Obucina, Springstube, and Krueger ordered Dauffenbach and other unit aids to take the wheelchair away from Plaintiff. (*Id.* at 13–14).

### 1.3 Analysis

#### 1.3.1 Personal Involvement of Certain Defendants

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under Section 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* As explained below, many of the Defendants do not have any personal liability related to Plaintiff's claims.

Plaintiff may not proceed on Section 1983 claims against Larson, Bones, Davidson, O'Donnell, Miller, and Becher (collectively, the "Administrative Defendants"), whose only involvement was in the administrative inmate complaint process. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). If a non-medical prison official does not ignore the inmate, but instead investigates the inmate's complaint and refers them to the appropriate medical staff, his duty is at an

---

[2] No affidavits were submitted to the Court.

end. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). None of the Administrative Defendants ignored Plaintiff, and instead investigated his claims and acted accordingly. Plaintiff's mere disagreement with their decisions does not a constitutional violation make.

Further, Kemper cannot be held liable for the actions of other prison officials simply because he is the warden. Rather, he is responsible only for his own conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (to be liable, a supervisory defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). Plaintiff has not alleged any facts that would attach personal liability to Kemper. Thus, Plaintiff will not be able to proceed on claims against Kemper.

### 1.3.2 Eighth Amendment

Plaintiff's allegations invoke his rights under the Eighth Amendment, which secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quotation omitted). To sustain such a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Deliberate indifference equates to intentional or reckless conduct, not mere negligence. *Berry*, 604 F.3d at 440. "Neither medical malpractice nor mere disagreement with a

Page 9 of 15
Case 2:20-cv-00431-JPS   Filed 03/30/21   Page 9 of 15   Document 19

doctor's medical judgment is enough to prove deliberate indifference." *Id.* at 441. Additionally, to show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

Viewing the facts in a light most favorable to Plaintiff, the allegations against Defendants Obucina and Langafelt regarding denying Plaintiff ice for his knees for one day do not rise to the level of a constitutional violation. *See Askew v. Davis*, 613 F. App'x 544, 548 (7th Cir. 2015) (one day delay in providing foot cream for diabetes was not deliberate indifference); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (removal of toenail without anesthetic did not constitute deliberate indifference).

However, Plaintiff's assertion that certain Defendants repeatedly removed a wheelchair designated for Plaintiff's use adequately suggests deliberate indifference to his medical condition. The Seventh Circuit has held that "denying a prisoner adaptive equipment may amount to deliberate indifference." *Estrada v. Reed*, 508 F. Supp. 2d 699, 708 (W.D. Wis. 2007) (citing *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991)). In light of the low bar applied at the screening stage, the Court will allow Plaintiff to proceed against Defendants Mr. Krueger, Sgt. Langafelt, C.O. Obucina, Sgt. Cruz, C.O. Lang, Keith Springstube, C.O. Christianson, Sgt. Gudal, Justin Schuller, and C.O. Stoiber for deliberate indifference.

### 1.3.3 Americans with Disabilities Act & Rehabilitation Act

Title II of the Americans with Disabilities Act "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability," and it applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To

establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132).

The analysis under the Rehabilitation Act, 29 U.S.C. § 794, is essentially the same, except that the RA includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical"). The relief available to Plaintiff under the ADA and RA are coextensive. *Jaros*, 684 F.3d at 671. As Plaintiff can have only one recovery, the Court will proceed with the analysis under the RA, and not the ADA which includes issues of sovereign immunity. *Id.* at 671–72. To state a claim under the RA, a plaintiff must allege that "(1) he is a qualified person (2) with a disability and (3) [the defendant] denied him access to a program or activity because of his disability." *Wagoner*, 778 F.3d at 592 (quoting *Jaros*, 684 F.3d at 672).

Plaintiff alleges that he was denied reasonable accommodation— access to a wheelchair—in violation of the ADA/RA. "Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, 'the Supreme Court has located a duty to accommodate in the statute generally.'" *Jaros*, 684 F.3d at 672 (quoting *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 747 (7th Cir. 2006)); *see also Alexander v. Choate*, 469 U.S. 287, 300–01 (1985). At the screening stage, the Court will assume that

Plaintiff is a qualified person, that he has a disability because he requires a wheelchair, and that when he was denied access to a wheelchair he was denied reasonable accommodation in violation of the RA. Thus, the Court will grant Plaintiff leave to proceed on an RA claim. That claim is properly brought against Kevin Carr, the current Department of Corrections ("DOC") Secretary, in his official capacity. *See* 42 U.S.C. § 12131(1)(B); *Jaros*, 684 F.3d at 670 n.2 (noting that because individual capacity claims are not available, the proper defendant is the agency or its director in his official capacity).

## 2. MISCELLANEOUS MOTIONS

Plaintiff filed a motion for leave to proceed without prepaying the filing fee ("IFP"). (Docket #2). The Court ordered Plaintiff to pay $83.08 as an initial partial filing fee on March 31, 2020. (Docket #5). However, on May 20, 2020, Plaintiff paid $350.00 towards the filing fee. When a plaintiff is granted IFP, the filing fee is only $350.00 instead of the normal $400.00. (*Id.*) Therefore, in this unusual situation, the Court will grant Plaintiff's IFP motion, which in turn, results in Plaintiff having paid the full filing fee.

Additionally, Plaintiff's motions for default judgment, (Docket #9, #14), and motion directing Defendants to reply, (Docket #12), must be denied. As the Court had not yet screened the Plaintiff's complaint, Defendants did not have any obligation to respond and default judgment would be improper. Finally, Plaintiff's motion to withdraw magistrate judge consent, (Docket #16), will be denied without prejudice. Defendants have yet to be served in this case, and therefore, this case remains before the assigned district judge.

### 3. CONCLUSION

In sum, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, when Defendants Mr. Krueger, Sgt. Langafelt, C.O. Obucina, Sgt. Cruz, C.O. Lang, Keith Springstube, C.O. Christianson, Sgt. Gudal, Justin Schuller, and C.O. Stoiber repeatedly took a wheelchair away from Plaintiff; and

**Claim Two:** A Rehabilitation Act claim against Kevin Carr, the current DOC Secretary, in his official capacity.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion directing Defendants to reply (Docket #12) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions for default judgment (Docket #9, #14) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to withdraw magistrate judge consent (Docket #16) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendants Paul S. Kemper, A. Larson, Michelle Bones, E. Davidson, Cindy O'Donnell, Captain Miller, and Lon Becher be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Mr. Krueger, Sgt. Langafelt, C.O. Obucina, Sgt. Cruz, C.O. Lang, Keith Springstube, C.O. Christianson, Sgt. Gudal, Justin Schuller, C.O. Stoiber, and Kevin Carr;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this order; and

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge